# In the United States Court of Federal Claims

No. 20-783C

(Filed: February 5, 2021)

_____

**CODY L. ADAMS, et al.,**

        Plaintiffs,

v.

**UNITED STATES,**

        Defendant.
_____

Claim by prison guards and food workers for hazardous duty pay or environmental differential pay; 5 U.S.C. §§ 5545(d), 5343(c)(4); work with, and in close proximity to, persons infected with COVID-19 virus

Theodore R. Coploff, McGillivary Steele Elkin LLP, Washington, D.C., for plaintiffs.

Eric E. Laufgraben, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Jeffrey Bossert Clark, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Allison Kidd-Miller, Assistant Director, and Liridona Sinani, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as Marie C. Clarke, Douglas S. Goldring, and Kathleen Haley Harne, Office of General Counsel, Federal Bureau of Prisons, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Plaintiffs, current and former employees of the Federal Bureau of Prisons, Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury") have sued the United States, seeking a declaratory judgment, hazardous duty pay, environmental differential pay, overtime pay, interest, and attorneys' fees and costs. *See* Compl. at 16-22, ECF No. 1. The current and former employees assert that they are entitled under federal law to additional pay due to their "work with or in close proximity to objects, surfaces, and/or individuals infected with" the novel coronavirus.[1] Compl. ¶¶ 25, 30. Defendant has moved to dismiss the complaint pursuant to

---

[1] The novel coronavirus, or SARS-CoV-2, causes the disease known as COVID-19. *See* Vivien Williams, *How the Virus that Causes COVID-19 Differs from Other Coronaviruses*, MAYO CLINIC NEWS NETWORK (Mar. 30, 2020), https://newsnetwork.mayoclinic.org/discussion/how-the-virus-that-causes-covid-19-differs-from-other-coronaviruses/. While the terms for the

Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  *See* Def.'s Mot. to Dismiss or, in the Alternative, for a More Definite Statement ("Def.'s Mot."), ECF No. 9.  After briefing, *see* Pls.' Resp. to Def.'s Mot. ("Pls.' Resp."), ECF No. 10; Def.'s Reply to Pls.' Resp. ("Def.'s Reply"), ECF No. 13, the court held a hearing on December 22, 2020.  The motion is ready for disposition.

The court concludes that, in light of binding precedent, plaintiffs' alleged exposure to the novel coronavirus does not entitle them to compensation pursuant to 5 U.S.C. §§ 5545(d) or 5343(c)(4).  Given that plaintiffs' claim for overtime pay under the Fair Labor Standards Act ("FLSA") is derivative of their claims for hazardous duty pay and environmental differential pay, this claim must also be dismissed.  Because plaintiffs have failed to state a claim upon which relief may be granted, the government's motion to dismiss is GRANTED and plaintiffs' complaint is DISMISSED.

## BACKGROUND[2]

The novel coronavirus was first identified in 2019 "as the cause of a disease outbreak that originated in China."  *Coronavirus Disease 2019 (COVID-19)*, MAYO CLINIC (Dec. 22, 2020), https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963.  COVID-19, a contagious respiratory illness caused by the virus, can result in symptoms ranging from mild to severe.  *See Symptoms of Coronavirus*, CENTERS FOR DISEASE CONTROL & PREVENTION (Dec. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.  On March 11, 2020, the World Health Organization declared the coronavirus outbreak a pandemic.[3]  The United States continues to struggle with preventing the spread of the virus as states report new infections and deaths every day.  *See generally Coronavirus Resource Center*, JOHNS HOPKINS UNIVERSITY & MEDICINE, https://coronavirus.jhu.edu/map.html (last visited Feb. 4, 2021).

The virus "can [be] spread by a person being exposed to small droplets or aerosols that stay in the air for several minutes or hours."  *Coronavirus Disease 2019 (COVID-19)*, MAYO CLINIC (Dec. 22, 2020), https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963.  Infection can also result when "a person touches a surface or object with the virus on it and then touches his or her mouth, nose or eyes, although this isn't considered to be a main way it spreads."  *Id*.  These characteristics enable the virus to spread rapidly in

---

virus and the disease are often conflated, the novel coronavirus itself is the "virulent biological[]" or "hazardous micro-organism[]" relevant to plaintiffs' claims.  Compl. ¶ 28.

[2] The recitations that follow do not constitute findings of fact, but rather are recitals attendant to the pending motions and reflect matters drawn from the complaint, the parties' briefs and records, and documents appended to the complaint and briefs.

[3] *See* WHO Director-General's opening remarks at the media briefing on COVID-19, WORLD HEALTH ORGANIZATION (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

confined spaces, leaving prison populations and staff susceptible to infection. As of February 2021, 2,164 federal inmates and 1,745 staff members of the Bureau of Prisons currently "have confirmed positive test results for COVID-19 nationwide," while more previously have had the virus or tested positive for the disease, and have recovered. *COVID-19 Update*, FEDERAL BUREAU OF PRISONS (Feb. 4, 2021), https://www.bop.gov/coronavirus/. The deaths of 216 federal inmates and 3 staff members have been attributed to the disease. *Id.*

FCI Danbury, which houses over 650 inmates, is a low security federal correctional institution. Compl. ¶¶ 7, 11. The plaintiffs employed at FCI Danbury include a correctional officer, a cook supervisor, and other "current or former correctional worker[s] employed by the United States Department of Justice, Bureau of Prisons, at FCI Danbury." Compl. ¶¶ 3-7. According to the complaint, over 100 employees and inmates of FCI Danbury have tested positive for COVID-19. Compl. ¶ 17. Plaintiffs filed suit in this court on June 26, 2020, seeking "a declaratory judgment, damages and other relief" pursuant to federal statutes. Compl. ¶ 1. These current and former employees are either general schedule salaried employees eligible for hazardous duty pay pursuant to 5 U.S.C. § 5545(d), or waged employees eligible for environmental differential pay pursuant to 5 U.S.C. § 5343(c)(4). *See* Compl. ¶¶ 33, 43; *see also Adams v. United States*, ___ Fed. Cl. ___, ___, 2020 WL 7334354, at *2 (Dec. 14, 2020) (hereinafter "*Charles Adams*") ("[H]azardous duty pay is available to general schedule salaried employees, while environmental differential pay is available to waged employees."). Plaintiffs allege that they are entitled to differential pay due to their "work in or in close proximity to objects, surfaces, and/or individuals infected with" the novel coronavirus. Compl. ¶¶ 36-38, 48-51.

## STANDARDS FOR DECISION

Under RCFC 12(b)(6), a complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual matters alleged "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations omitted).

When reviewing the complaint, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986)) (additional citation omitted). Conclusory statements of law and fact, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to state a claim. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557); *accord Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

**ANALYSIS**

*I.     Hazardous Duty Pay Pursuant to 5 U.S.C. § 5545(d)*

General schedule salaried federal employees qualify for hazardous duty pay when they are assigned and perform a "duty involving unusual physical hardship or hazard," unless their employment classification "takes into account the degree of physical hardship or hazard involved in the performance of [their] duties." 5 U.S.C. § 5545(d). In this respect, the "physical hardship or hazard" must be one that is "not *usually* involved in carrying out the duties of [the] position." *Id.* (emphasis added). Congress tasked the Office of Personnel Management ("OPM") with establishing schedules of pay differentials for hazardous duty pay, *see id.*, as well as prescribing regulations necessary for the administration of the statute, 5 U.S.C. § 5548(d). OPM has defined "[d]uty involving physical hardship" as "duty that may not in itself be hazardous, but causes extreme physical discomfort or distress and is not adequately alleviated by protective or mechanical devices, such as . . . exposure to fumes, dust, or noise that causes nausea, skin, eye, ear, or nose irritation." 5 C.F.R. § 550.902. OPM further defined "[h]azardous duty" as "duty performed under circumstances in which an accident could result in serious injury or death, such as duty performed on a high structure where protective facilities are not used . . . ." *Id.*

Under its Schedule of Pay Differentials Authorized for Hazardous Duty Pay, OPM set forth numerous categories of duties involving physical hardship or hazard. 5 C.F.R. Part 550, Subpart I, Appx. A. Among these categories is "work with or in close proximity to . . . [v]irulent biologicals." *Id.* Plaintiffs rely on this category in asserting their claim for hazardous duty pay. *See* Compl. ¶¶ 32-38. OPM elaborates that the term "[v]irulent biologicals" refers to "[m]aterials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. Part 550, Subpart I, Appx. A. The Federal Personnel Manual provides examples of when an employee works "with or in close proximity to . . . [v]irulent biologicals," including "[o]perating or maintaining equipment in biological experimentation or production[, c]leaning and sterilization of vessels and equipment contaminated with virulent microorganisms," and "[c]aring for or handling disease-contaminated experimental animals in biological experimentation and production in medical laboratories, the primary mission of which is research and development not associated directly with patient care." Federal Personnel Manual Supp. 990-2, § 550-E-4, 1973 WL 151518 (Feb. 28, 1973).[4]

In sum, plaintiffs who are current or former general schedule salaried employees of FCI Danbury must establish three elements in order to state a claim for hazardous duty pay: (1) the employee was assigned to and performed work "with or in close proximity to" the novel coronavirus, 5 C.F.R. Part 550, Subpart I, Appx. A; (2) the virus itself is a "[v]irulent biological[]," *id.*; and (3) the employees' job classifications do not take exposure to the virus into

---

[4] While OPM retired the Federal Personnel Manual on December 31, 1993, the publication "continues to be a valuable resource for construing regulations that were promulgated or were in effect" prior to the date of retirement. *Schmidt v. Department of Interior*, 153 F.3d 1348, 1353 n.4 (Fed. Cir. 1998) (citing *Markland v. Office of Pers. Mgmt.*, 140 F.3d 1031, 1034 (Fed. Cir. 1998)).

account, *i.e.*, the employees' exposure to the virus is an "*unusual* physical hardship or hazard," 5 U.S.C. § 5545(d) (emphasis added); *see also* 5 C.F.R. § 550.904(a).[5]

In its motion to dismiss, the government avers that plaintiffs have failed to sufficiently allege that they worked "with or in close proximity to" the novel coronavirus itself, only that they have performed "work with or in close proximity to objects, surfaces, and/or individuals infected with" the virus. Def.'s Mot. at 15 (quoting Compl. ¶¶ 25, 30) (emphasis removed). Plaintiffs counter that the language used in their complaint does not distinguish their claims from the regulation in any meaningful way. Pls.' Resp. at 11.

The Federal Circuit addressed the scope of both 5 U.S.C. § 5545(d) and 5 C.F.R. § 550.902 in *Adair v. United States*, 497 F.3d 1244 (Fed. Cir. 2007). In *Adair*, prison guards employed by the Federal Correctional Institution in Jesup, Georgia sought "enhanced back pay for their exposure to inmates' smoking . . . ." *Adair*, 497 F.3d at 1249. The Federal Circuit affirmed the Court of Federal Claims' dismissal of plaintiffs' complaint under RCFC 12(b)(6), emphasizing that 5 U.S.C. § 5545(d) "[c]learly . . . does not cover all physical hardships or hazards, but only those that are 'unusual.'" *Id.* at 1253 (footnote omitted). In concluding that exposure to secondhand smoke was not an "unusual" hardship under the plain meaning of the statute, the court contrasted the prison guards' claim to examples of "unusual physical hardships or hazards" provided by the Chairman of the U.S. Civil Service Commission:

> We would visualize assignments such as those requiring *irregular or intermittent participation* in hurricane weather flights, participation in test flights of aircraft during their developmental period or after modification, participation in trial runs of newly built submarines or in submerged voyages of an exploratory nature such as those under the Polar ice fields, and performance of work at extreme heights under adverse conditions, as among those meeting the criteria of unusual physical hardships or hazard. . . . The examples cited above . . . take into consideration, for example, such matters as the need to deliberately operate equipment such as newly developed or modified aircraft beyond its known design capabilities or safe operating limits, and exposure to elements or conditions over which little or no control can be exercised.

*Id.* at 1254 (quoting *Hazardous Duty Pay: House Report No. 31*, 89th Cong. (1st Sess. 1965)) (emphasis added). While the cited examples were assignments requiring "irregular or intermittent participation," *id.*, secondhand smoke at the prison "was commonly encountered indoors and outdoors," *id.* at 1253. The court also noted that "Congress . . . could not have intended to have included [secondhand smoke] as an unusual risk or hazardous work situation because at the time the statute was enacted, Congress was unaware of the dangers of" exposure to secondhand smoke. *Id.* at 1254.

---

[5] "As the statute does not define 'unusual,' [courts should] apply its ordinary meaning. It is clear from a plain reading of the statute that [the term] 'unusual physical hardship or hazard' include[s] those 'not usually involved in carrying out the duties' of an employee's position." *Adair v. United States*, 497 F.3d 1244, 1253 n.2 (Fed. Cir. 2007) (quoting 5 U.S.C. § 5545(d)).

In the present case, plaintiffs encounter an analogous obstacle in their workplace. While secondhand smoke and the novel coronavirus pose distinct risks to human health, neither qualifies as an "unusual" hardship under the plain meaning of 5 U.S.C. § 5545(d). The employees' potential exposure to the novel coronavirus is not the result of an "irregular or intermittent" assignment, *Adair*, 497 F.3d at 1254 (citation omitted), but appears to stem from their regular duties at FCI Danbury. Plaintiffs do not allege they have performed new duties since the beginning of the pandemic, but that "[a]s a result of plaintiffs' performance of their official duties . . . [they] have been exposed" to the novel coronavirus. Compl. ¶ 28. Just as the prison guards in *Adair* were exposed to secondhand smoke when their duties of employment "involved the caretaking and monitoring of inmates," plaintiffs here were and have been allegedly exposed to the novel coronavirus in executing their official duties at FCI Danbury. *See Adair*, 497 F.3d at 1253. "Congress, moreover, could not have intended to have included" exposure to the novel coronavirus "as an unusual risk or hazardous work situation because at the time the statute was enacted, Congress was unaware of the dangers of" the virus. *Id.* at 1254. In light of binding precedent, therefore, exposure to the virus at FCI Danbury cannot be characterized as an "unusual" hardship under 5 U.S.C. § 5545(d).

Congress "left open the possibility," however, that exposure to the virus "could be covered by the statute by delegating to OPM the authority to establish 'pay differentials for duty involving unusual physical hardship or hazard.'" *Adair*, 497 F.3d at 1254 (quoting 5 U.S.C. § 5545(d)) (emphasis removed). To date exposure to the novel coronavirus at FCI Danbury does not qualify as either a "duty involving physical hardship" or a "hazardous duty" as defined by OPM. While plaintiffs allege that they "have performed work in or in close proximity to objects, surfaces, and/or individuals infected with" the novel coronavirus "without sufficient protective devices," Compl. ¶ 36, an allegation of insufficient protective equipment does not establish that the hazard posed by the virus "is not adequately alleviated by protective or mechanical devices," *Adair*, 497 F.3d at 1255 (noting that secondhand smoke "can be adequately alleviated by protective or mechanic[al] devices, such as ventilation systems); *see* 5 C.F.R. § 550.902.[6] Furthermore, plaintiffs' work cannot be categorized as a "hazardous duty," as potential exposure

---

[6] OPM's guidance regarding hazardous duty pay based on potential exposure to the novel coronavirus further calls into question plaintiffs' claim under 5 U.S.C. § 5545(d):

> The hazard pay differential cannot be paid to an employee who may come in contact with the virus or another similar virus through incidental exposure to the public or other employees who are ill rather than being exposed to the virus during the performance of assigned duties (e.g., as in the case of a poultry handler or health care worker). Also, the virus must be determined to be likely to cause serious disease or fatality for which protective devices do not afford complete protection.

OPM Memorandum No. 2020-05, Attach. A at 12 (Mar. 7, 2020), *available at* https://go.usa.gov/xG2KS. While plaintiffs allege that over 100 employees and inmates of FCI Danbury have tested positive for COVID-19, Compl. ¶ 17, the widespread nature of the pandemic raises the probability that plaintiffs have come into contact with the virus via "incidental exposure" as described by OPM.

6

to the virus is dissimilar to an "accident . . . such as duty performed on a high structure where protective facilities are not used . . . ." 5 C.F.R. § 550.902. Plaintiffs' claim for hazardous duty pay, therefore, lacks textual support from the relevant statute, the corresponding regulation, and binding precedent.[7]

### II. Environmental Differential Pay Pursuant to 5 U.S.C. § 5343(c)(4)

While general schedule salaried employees are eligible for hazardous duty pay in certain scenarios, waged employees qualify for environmental differential pay "for duty involving unusually severe working conditions or unusually severe hazards . . . ." 5 U.S.C. § 5343(c)(4). OPM promulgated 5 C.F.R. § 532.511 in response to the statute, authorizing "environmental differential pay when [an employee is] exposed to a working condition or hazard that falls within one of the categories approved by the Office of Personnel Management." 5 C.F.R. § 532.511(a)(1). The categories upon which plaintiffs rely are "work[] with or in close proximity to micro-organisms" which present a "high degree hazard," and "work[] with or in close proximity to micro-organisms" which present a "low degree hazard." 5 C.F.R. Part 532, Subpart E, Appx. A. OPM elaborated on the "high degree hazard" category in Appendix A, stating that it covers "work situations wherein the use of safety devices and equipment, medical prophylactic procedures such as vaccines . . . and other safety measures do not exist or have been developed but have not practically eliminated the potential for . . . personal injury." *Id*. If waged employees seek environmental differential pay under this category, their work must "involve[] potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease." *Id*. The examples cited by OPM for "work[] with or in close proximity to micro-organisms" posing a "high degree hazard" include "[d]irect contact with primary containers of organisms pathogenic for man such as culture flasks, culture test tubes, hypodermic syringes and similar instruments," and "cultivating virulent organisms on artificial media." *Id*. The category of "work[] with or in close proximity to micro-organisms" which pose a "low degree hazard" encompasses "situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man . . . ." *Id*.

Plaintiffs seeking environmental differential pay, therefore, must show that (1) they "work[ed] with or in close proximity to" the novel coronavirus; (2) the virus is a "micro-organism" and safety precautions "have not practically eliminated" the risk of infection and

---

[7] The court acknowledges the recent decision in *Charles Adams*, in which correctional workers at the Bureau of Prisons Federal Medical Center in Lexington, Kentucky sued the United States for hazardous duty pay, environmental differential pay, and overtime pay. *See Charles Adams*, ____Fed. Cl. ____, 2020 WL 7334354. Plaintiffs assert that *Charles Adams* presented and resolved "near-identical factual and legal issues" to the case currently before the court. *See* Pls.' Notice of Suppl. Authority at 4, ECF No. 16. To the extent that the facts and legal issues in the present case parallel those presented in *Charles Adams*, the court respectfully disagrees with the decision in that case to hold that the plaintiffs there had "stated a claim for relief that rises above the speculative level." *Charles Adams*, ____Fed. Cl. ____, 2020 WL 7334354, at *6. The Federal Circuit's interpretation of the relevant terms in 5 U.S.C. § 5545(d), 5 C.F.R. § 550.902, and OPM's schedule of pay differentials precludes this court from concluding that plaintiffs have stated a claim for hazardous duty pay.

"personal injury;" and, if seeking pay under the "high degree hazard category, (3) plaintiffs' duties "involve[] potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease." 5 C.F.R. Part 532, Subpart E, Appx. A.

Again, *Adair* compels the court to conclude that plaintiffs have failed to state a claim. Just as exposure to the novel coronavirus is not "unusual" under § 5545(d), such exposure cannot be characterized as "unusually severe" under § 5343(c)(4). Plaintiffs in *Adair* argued that exposure to cigarette smoke entitled them to environmental differential pay under two categories: "Poisons (toxic chemicals)—high degree hazard . . . and . . . Poisons (toxic chemicals)—low egress hazard." *Adair*, 497 F.3d at 1256-57. In holding that the plaintiffs in *Adair* had failed to state a claim under § 5343, the Federal Circuit emphasized the importance of the examples of "high or low degree hazards provided in the regulations . . . . Although the examples are not exhaustive, they all describe scenarios where the job assignment requires directly or indirectly working *with* toxic chemicals or containers that hold toxic chemicals as part of a job assignment . . . ." *Id.* at 1257-58 (emphasis in original). Notably, the Federal Circuit pointed out that "[t]he examples do not cover situations in which the employees work with inmates who *incidentally* smoke, for there is no work '*with*' [second-hand smoke] in this context." *Id.* at 1258 (emphasis added).

In the present case, plaintiffs have not worked "with" the novel coronavirus, but "with or in close proximity to objects, surfaces, and/or individuals infected with" the virus. Compl. ¶ 48. In other words, plaintiffs allegedly have worked with objects and surfaces infected with the virus, as well as "with inmates who incidentally" have COVID-19. *Adair*, 497 F.3d at 1258. OPM's examples of "work[] with or in close proximity to micro-organisms" are instructive. As correctional officers, cook supervisors, and other employees at FCI Danbury, plaintiffs' duties are not analogous to those which require "[d]irect contact with primary containers of organisms pathogenic for man such as culture flasks, culture test tubes, hypodermic syringes and similar instruments," or "cultivating virulent organisms on artificial media." 5 C.F.R. Part 532, Subpart E, Appx. A.

Plaintiffs point to *Abbott v. United States*, 47 Fed. Cl. 582 (2000), in arguing that *Adair* does not foreclose their claims. Pls.' Resp. at 4; Hr'g Tr. 34:17 to 36:5 (Dec. 22, 2020). In *Abbott*, the court concluded that plaintiffs had stated a well-pleaded claim insofar as they allegedly worked near contaminated rivers containing "virulent biologicals." *Abbott*, 47 Fed. Cl. at 584. To be sure, *Adair* addressed categories involving "toxic chemicals," *Adair*, 497 F.3d at 1256-57, while plaintiffs allege exposure to "virulent biologicals," as in *Abbott*, 47 Fed. Cl. at 584, and "micro-organisms," Compl. ¶ 28. Even putting aside the fact that *Adair* was decided after *Abbott*, the phrase "with or in close proximity to" is used in OPM's schedules for differential pay when working with "virulent biologicals," "micro-organisms," and "toxic chemicals." *See* 5 C.F.R. Part 550, Subpart I, Appx. A; 5 C.F.R. Part 532, Subpart E, Appx. A. *Adair* addressed a different category under the schedule for environmental differentials, but this detail does not render the Federal Circuit's decision irrelevant. "[T]he substantial relation[s] between" the categories and schedules promulgated by OPM "present[] a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (quoting *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986)) (additional

8

citations and quotation marks omitted). Therefore, the Federal Circuit's interpretation of the phrase "with or in close proximity to" in the context of environmental differential pay is binding on this court.[8]

### III. Overtime Pay Under the Fair Labor Standards Act

Plaintiffs also claim that they "have been unlawfully deprived of overtime compensation" under FLSA. Compl. ¶ 58. The government violated FLSA, plaintiffs allege, "by failing to include hazardous duty pay and environmental differential payments . . . in the regular rate of pay at which FLSA overtime is paid." Compl. ¶ 57. The government counters that plaintiffs' failure to state a claim under either 5 U.S.C. § 5545(d) or § 5343(c)(4) precludes recovery additional overtime pay. Def.'s Mot. at 23.

The court concurs with the government, because plaintiffs' claim for overtime pay under FLSA is derivative of their claims for hazardous duty pay and environmental differential pay. FLSA provides that an employee who works over 40 hours in a workweek is entitled to "compensation for his employment in excess of the [40] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The "regular rate" which employees of FCI Danbury were paid would be higher if they could claim entitlement to hazardous duty pay or environmental differential pay. Plaintiffs' failure to state a claim for these payments, however, bars their claim under FLSA as well.

### CONCLUSION

For the reasons stated, the government's motion to dismiss is GRANTED. Plaintiffs' complaint shall be DISMISSED for failure to state a claim. The clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[8] The court in *Charles Adams* held that plaintiffs had sufficiently pled their claim for environmental differential pay to survive the motion to dismiss. 2020 WL 7334354, at *6. Here also, however, the Federal Circuit's interpretation of the term "with or in close proximity to," as well as its emphasis on the examples provided in OPM's schedule of environmental differentials, compel the court to dismiss plaintiff's environmental differential claim. *Compare* Compl. ¶ 48, *with Adair*, 497 F.3d at 1258 (concluding from the examples provided in 5 C.F.R. Part 532, Subpart E, Appx. A that plaintiffs did not work "with" secondhand smoke).